Juan Hong (CA SBN 234046)
Law Office of Juan Hong, A Law Corp.
4199 Campus Drive, Suite 550
Irvine, CA 92612
Phone: (949) 509-6505
Fax: (949) 335-6647
Email: jhong48@gmail.com

Attorney for Plaintiff

United States District Court
For the Central District of California
Southern Division

| | |
|---|---|
| United States ex rel. Juan Hong, A Law Corp. <br><br> Plaintiff, <br><br> vs. <br><br> Newport Sensors, Inc., and Maria Q. Feng, and DOES 1 through 10 <br><br> Defendants. | Case No. SACV13-01164-JLS (JPRx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** <br><br> Date: May 20, 2016 <br> Time: 2:30 p.m. <br> Judge: HON. JOSEPHINE L. STATON <br> Courtroom: 10A <br> filed: 08/02/2013 |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

# TABLE OF CONTENTS

I.     INTRODUCTION     1

(1) *USA v. SciberQuest, Inc.* (United District Court, Southern     2
District of California, 16-cr-00026, filed on 01/07/2016;
Deferral of Prosecution Agreement on 01/14/2016), News
Release on January 7, 2016 from Department of Justice,
U.S. Attorney's Office

(2) *United States v. Kashani and Zhao* (December 18, 2013,     2
United States District Court, N.D. California, CR-13-00201),
2013 WL 6671672

(3) *United States v. Yujie Ding and Yulia Zotova* (03/31/16,     3
United States District Court, the Eastern District of Pennsylvania,
15-cr-00035-HB) 2015 WL4111715

(4) *United States v. Samim Anghaie* (11th Cir. November 2015),     5
2015 WL 7720313

II.     FATAL ERRORS IN DEFENDANTS' DOCUMENTS     5

(1) INVALID DECLARATION OF JOSHUA M. DEITZ IN     5
SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL
NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT

(2) DEFECTIVE NOTICE OF MOTION AND MOTIONS TO     6
DISMISS AND STRIKE

(3) NONCONFORMING DECLARATION OF JOSHUA M.     7
DEITZ IN SUPPORT OF DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE SECOND AMENDED COMPLAINT

i

III.   DEFENDANTS' FAILURE IN INVOKING                        8
       PROPER PROVISIONS

       (1) DEFENDANTS' FAILURE OF INVOKING FEDERAL           8
       RULES OF CIVIL PROCEDURE RULE 12(b)(1)

       (2) DEFENDANTS' FAILURE OF INVOKING PRE-PPACA         8
       31 U.S.C. § 3730(e)(4)(A)

IV.    DEFENDANTS' DISTORTION AND MISREPRESENTATION:         11
       "PUBLICLY DISCLOSED FACTS AND ALLEGATIONS"

V.     ARGUMENT                                              12

       A. The Court Should Not Dismiss the SAC Claims Regarding   12
       the NIST Agreements under FRCP 12(b)(6) for Failure to
       State a Claim.

       B. The Court Should Not Dismiss the Entire SAC under FRCP 9(b)   14

       C. The Court Should Not Dismiss the SAC under 31 U.S.C.    19
       § 3730(e)(4)(A) Because that Complaint Is Not Based on Publicly
       Disclosed Facts and Allegations

            (1) PUBLIC DISCLOSURE TO ALERT THE               19
            GOVERNMENT TO READILY IDENTIFY
            WRONGDOER

            (2) RELATOR'S DISCOVERY AND INVESTIGATION        20

       D. All the Allegations in the Complaint are Relevant.      22

            1. Allegations Regarding Dr. Feng's Relationship with   23
            UC Irvine Are Not Irrelevant and Prejudicial

            2. Allegations Regarding Masanobu Shinozuka and     23
            Hong Feng Are Not Irrelevant and Prejudicial

VI. CONCLUSION                                               25

ii

# TABLE AUTHORITIES

*Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96 (3rd Cir.1983)        14

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010)        14

*Flowers v. Abex Corp.,* 580 F.Supp. 1230 (N.D.Ill.1984)        7

*Graham County Soil and Water Conservation District v. United States*        8
    *ex rel. Wilso*n, 559 U.S. 280 (2010)

*Hagood v. Sonoma County Water Agency,* 81 F.3d 1465 (9th Cir.1996)        9

*Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037 (9th Cir. 2012)        22

*In re Natural Gas Royalties,* 562 F.3d1032 (10th Cir. 2009)        19

*Jones v. Blanas* (9th Cir.2004) 393 F.3d 918        7

*Kennard v. Comstock Resource, Inc.* (10th Cir. 2004) 363 F.3d 1039        20

*Martinez v. Trainor,* 556 F.2d 818 (7th Cir.1977)        6

*Neder v. United States*, 527 U.S. 1, 16 (1999)        22

*Nissho-Iwai American Corporation v. Kline* (5th Cir. 1988) 845 F.2d 1300        7

*Shapiro v. UJB Fin. Corp.,* 964 F.2d 272 (3rd Cir. 1992)        14

*Talano v.Northwestern, Med. Faculty Found., Inc.,* 273 F.3d 757        6
(7th Cir.2001)

*United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr.*        20
    *University*, 147 F.3d 821 (9th Cir. 1998)

*United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008)        22

*United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180        12
    (5th Cir. 2009)

*United State ex rel. Hafter v. Spectrum Emergency Care* (10th Cir. 1999)        21
    190 F.3d 1156   21

*United States ex rel. Jamison v. McKesson Corp.,* 649 F.3d 322        19
    (5th Cir. 2011)

*United States v. Kashani and Zhao* (December 18, 2013, N.D. California,)   2
2013 WL 6671672

*United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048   14
        (9th Cir. 2001)

*United States ex rel. Lindenthal v. Gen. Dynamics Corp.,* 61 F.3d 1402   9
        (9th Cir.1995)

*United States ex rel. Lujan v. Hughes Aircraft Co.,* 162 F.3d 1027   10
        (9th Cir.1998)

*United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health*   19
        *Sys. Corp.,* 276 F.3d 1032 (8th Cir. 2002)

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,*   19
        384 F.3d 168 (5th Cir. 2004)

*United States v. Samim Anghaie* (11th Cir. 2015), 2015 WL 7720313   5

*United States v. SciberQuest, Inc.* (S.D. of California, 16-cr-00026,   2
        filed on 01/07/2016)

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn* (D.D.Cir. 1994)  20
        14 F.3d 645

*United States v. Yujie Ding and Yulia Zotova* (E.D. of Pennsylvania)   3
        2015 WL4111715

*Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir. 1992)   9


**Federal Rules and Statutes**

Federal Rules of Civil Procedure Rule 7(b)(1)   6

Federal Rules of Civil Procedure 9(b)   14

Federal Rules of Civil Procedure Rule 12(b)(1)   8

Federal Rules of Civil Procedure Rule 12(b)(6)   8

28 U.S.C. § 1746   7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31 U.S.C. § 3730(e)(4)(A)                                    7

31 U.S.C. § 3730(e)(4)(B)                                    9

Federal Rules of Evidence 201(b)(2)                          6

# I. INTRODUCTION

Defendants' Motion to Dismiss and Motion to Strike Second Amended Complaint starts with boiler plate arguments regarding falsity, particularity, public disclosure, and ends with the boiler plate statement that "It is time for the Court to end this waste of the Court's and the Defendants' time and resources and to dismiss this entire action with prejudice."

Defendants' documents are replete with defendants' misunderstandings of relevant law, distortion of legal authorities to mislead the court, and nonsensical interpretation of common knowledge.  For example, defendants imply that, even if Feng was a full time professor of the University of California with 100% employment, she can legitimately work for other organization without a conflict of interest because he has 128 hours free time per week to be employed outside UC Irvine.  Footnote 3 of Defendants' Memorandum of Points and Authorities states that:

> "The SAC's allegation that any commitment by Defendants to provide Dr. Feng as Principal Investigator was false because Dr. Feng, as a full time UC Irvine professor, could provide 0% of her time to Newport (at ¶¶ 4, 30, 31, 33, 35, 40, 42) is nonsensical. The SAC does not allege that Dr. Feng spent 24 hours a day, 7 days a week working at UC Irvine (nor could it be amended to do so within the confines of FRCP Rule 11).  California generally defines "full-time" work as eight hours a day and forty hours a week. Cal. Lab. Code §§ 510, 515. This leaves a full-time employee two weekend days and sixteen hours each week day, a total of 128 hours a week, to do other things."

For the right perspective of the instant case, the following four cases are on point in realizing sufficiency of the plaintiff's second amended complaint (SAC) with respect to the required elements of false claims act complaint, namely, falsity,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

scienter, and materiality.  The factual scenario of the instant case is almost same as those of the four cases.

**(1) *USA v. SciberQuest, Inc.* (United District Court, Southern District of California, 16-cr-00026, filed on 01/07/2016; Deferral of Prosecution Agreement on 01/14/2016), News Release on January 7, 2016 from Department of Justice, U.S. Attorney's Office**

Dr. Karimabadi falsely certified in SBIR award proposals submitted to NASA and USAF that he was primarily employed by SciberQuest.  In truth, he was employed full-time at University of California San Diego both at the time of the award submission and during the performance of the grant.  Dr. Karimabadi and SciberQuest made these false statements to be awarded grants or contracts that they likely would not have received but for the deception.  As a result, from 2005 to 2013, Dr. Karimabadi received over $1.9 million in salary from SciberQuest due, in part, to the fraudulently obtained grants or contracts.

**(2) *United States v. Kashani and Zhao* (December 18, 2013, United States District Court, N.D. California, CR-13-00201), 2013 WL 6671672**

In July 2007, Dr. Yang Zhao became a full time employee of UC Berkeley. Throughout 2008 Dr. Zhao worked for UC Berkeley "at what they referred to as 100% time." (*1.)   On January 31, 2008, Atlantic Scientific submitted a proposal to NSF for a Phase II award.  The proposal certified that the "primary employment of the PI [principal investigator] will be with this firm [Atlantic Scientific] at the time of the award and during the conduct of the research."   NSF granted an award of $499,993 for the period 12/15/2008 – 11/30/10. (*2.)  On June 22, 2009, and December 27, 2009, Atlas filed two Interim reports for the NSF Phase II grant. These reports certified that the PI is "primarily employed" by the grantee organization. (*2.)  Dr. Zhao was represented as the principal investigator on the NSF Phase II proposal. (*3)  The indictment charged that Dr. Zhao misrepresented to NSF that her "primary employment" was Atlas Nanotechnologies, when it was not. Indictment, ¶¶ 23-26. (*3)

2

The indictment asserted that: "From 2008-2011, Drs. Kashani and Zhao created a scheme to defraud 'NSF and NASA and to obtain money and property by means of materially false and fraudulent pretenses, representation, and promises, through two principal methods: (A) making materially false statements; and (B) failing to disclose material facts.' Indictment, ¶ 15." (*3.)

The December 5, 2014 Stipulation and Order for Early Termination of Pre-Trial Diversion states in paragraph 2) that: "Dr. Zhao committed to abide by a number of conditions … ….. abstaining from applying to as a 'Principal Investigator' for any grant funded by the United States Government."

### (3) *United States v. Yujie Ding and Yulia Zotova* (03/31/16, United States District Court, the Eastern District of Pennsylvania, 15-cr-00035-HB) 2015 WL4111715

Ding is a professor of the Lehigh University.  Ding is a sole proprietor of ArkLight.  ArkLight obtained research funding from NASA, but actually completed the work through Ding's university laboratory.  The research funding awarded through NASA's Small Business Innovation Research ("SBIR") Program. The proposals identified Zotova, wife of Ding, as the sole key personnel; claimed she would serve as the principal investigator for the entire project; and specified that she will plan and direct the entire project, lead it technically, and make substantial personal contributions during its implementation and ensure that the work proceeds according to contract agreements.  Ding used his position as a professor to have his employer, the University, enter into subcontracts with ArkLight.  Ding hid his relationship to ArkLight from the University.  Ding also failed to disclose his own or his wife's relationship to ArkLight in response to University Internal Audit yearly questionnaires.  A jury convicted defendants Ding and Zotova of six out of ten counts of wire fraud on November 20, 2015.

The court found that, because the role of PI was critical, the PI was automatically considered among the "key personnel" that had to have NASA

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

approval to be replaced.  ArkLight submitted proposals to NASA.  The proposals contained a page called "Form A" in which defendants certified compliance with many different aspects of the SBIR program, including that the PI was primarily employed by ArkLight, and that ArkLight would abide by the subcontractor limitations.  The certifications were required "[b]ecause these are all critical elements for eligibility in things that matter to NASA."  ArkLight's proposals to NASA stated that defendant Zotova was the PI and would be primarily responsible for each of the two related research projects; she would lead the projects technically; and that she would work closely with the student workers at Ding's university laboratory.  The proposals identified Zotova as the sole "key personnel;" claimed she would "serve as the principal investigator for the entire project;" and specified that "[s]he will plan and direct the entire project, lead it technically, and make substantial personal contributions during its implementation.  The court found that it was material to NASA that the small business conduct the work, because it was a requirement of the program's eligibility and because the program's purpose was to stimulate small business.  The principal investigator's identity was also "a highly rated factor, and it's often a key determinate" in awarding SBIR contracts.

It had been proven beyond a reasonable doubt that Ding and Zotova knowingly devised a scheme to defraud NASA by means of materially false representations, that they acted with the intent to defraud NASA, and that there were interstate wires transmitted in furtherance of the scheme.  Using ArkLight, Ding and Zotova lied to NASA about how proposed research work would be carried out, so that ArkLight could qualify for funding.  Ding deliberately kept his employer in the dark about his relationship to ArkLight so that he could keep getting NASA SBIR funding for his university research project.

The Court informed the jury that a "material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision."

### (4) *United States v. Samim Anghaie* (11th Cir. November 2015), 2015 WL 7720313

Samim Anghaie is a former University of Florida professor.  He and his wife Sousan made false statements to win four contracts for research funding through grant programs administered by NASA and the United States Air Force.  The Anghaies were convicted of criminal charges based on the same allegations.  The government then filed a civil lawsuit to recover damages and civil penalties.  The district awarded $2,746,631.37 in damages (three times the amount the government paid through the four contracts) plus a civil penalty of $231,000 ($11,000 for each of twenty-one false claims). (*1.)  The Anghaies were convicted of wire fraud for making materially false statements in proposals for three contracts, as well as in the progress reports for one of these three.  The Anghaies agreed to accomplish an unlawful plan; that they knew the unlawful purpose of the plan and joined willfully; that they engaged in at least one of the charged overt acts; and that they knowingly committed that act with the purpose of accomplishing some object of the conspiracy.  The Anghaies' false statements were material to the government deciding to pay false claims. The contracts were approved based on the Anghaies' false statements about the principal investigator on the project, the existence of a laboratory assistant, and the absence of subcontractors.  (*2.)

## II. FATAL ERRORS IN DEFENDANTS' DOCUMENTS

## (1) INVALID DECLARATION OF JOSHUA M. DEITZ IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT

The Declaration states in paragraph 2d: "Exhibit 4 is a true and correct copy of the University of California, Irvine (UC Irvine), Faculty Profile System, entry for Maria Q. Feng. This discloses that Dr. Feng was a professor at UC Irvine."

This statement does not mention when the copy was downloaded.  The copy has a disclaimer stating: "This Faculty Profile is inactive.  The faculty member may have temporarily disabled their profile, or have recently left the University.  ***Information displayed here may be inaccurate and/or out-of-date.***"  (Emphasis added.)  This disclaimer makes the copy to be subject to reasonable dispute.  Thus, Defendants' Request must be denied.  Fed.R.Evid. 201(b)(2) provides: "The court may judicially notice a fact that is not subject to reasonable dispute because it... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

## (2) DEFECTIVE NOTICE OF MOTION AND MOTIONS TO DISMISS AND STRIKE

Federal Rules of Civil Procedure Rule 7(b)(1) states in relevant part, "A request for a court order must be made by motion.  The motion must state with particularity the grounds for seeking the order…."  "Particularity" has been interpreted to mean "reasonable specification." *Talano v.Northwestern, Med. Faculty Found., Inc.,* 273 F.3d 757, 760 (7th Cir.2001) (quoting *Martinez v. Trainor,* 556 F.2d 818, 819-20 (7th Cir.1977)).

Defendants' Notice of Motion and Motion to Dismiss and Strike does not notice the issue of Public Disclosure under 31 U.S.C. § 3730(e)(4)(A).  This court must disregard Argument D: "The Court Should Dismiss the Entire SAC under 31 U.S.C. § 3730(e)(4)(A) Because that Complaint Is Based On Publicly Disclosed Facts and Allegations."

Defendants' Notice mentions a nonexistent Declaration of Aaron P. Silberman, but, does not mention Declaration of Joshua M. Deitz in Support of

6

1  Defendants' Request for Judicial Notice in Support of Motion to Dismiss and
2  Motion to Strike Second Amended Complaint.  Thus, Declaration of Joshua M.
3  Deitz must be disregarded.

4

5  **(3) NONCONFORMING DECLARATION OF JOSHUA M. DEITZ IN
6  SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN
   SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE
7  SECOND AMENDED COMPLAINT**

8      Under 28 U.S.C. § 1746, a matter may be proved by a signed statement,
9  executed within the United States, that reads: "I declare (or certify, verify, or state)
10 under penalty of perjury that the foregoing is true and correct. Executed on (date).
11 (Signature)." (*Jones v. Blanas* (9th Cir.2004) 393 F.3d 918, 923)

12     *Nissho-Iwai American Corporation v. Kline* (5th Cir. 1988) 845 F.2d 1300,
13 1306-1307 states: "It is a settled rule in this circuit that an unsworn affidavit is
14 incompetent to raise a fact issue precluding summary judgment.[11] A statutory
15 exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn
16 declarations to substitute for an affiant's oath if the statement contained therein is
17 made "under penalty of perjury" and verified as "true and correct."[12] Kline's
18 affidavit is not in substantial conformity with either formula because, as drafted, it
19 allows the affiant to circumvent the penalties for perjury in signing onto intentional
20 falsehoods. ***Kline never declared her statement to be true and correct***; therefore,
21 her affidavit must be disregarded as summary judgment proof. *See also Flowers v.*
22 *Abex Corp.,* 580 F.Supp. 1230, 1233 n. 2 (N.D.Ill.1984) (merely notarizing
23 signature does not transform document into affidavit that may be used for
24 summary judgment purposes)." (Emphasis added.)

25     Declaration of Joshua M. Deitz never declared his statement to be true and
26 correct; therefore his declaration must be disregarded as proof of authenticity of
27 Exhibits 1 through 6.

28

### III.  DEFENDANTS' FAILURE IN INVOKING PROPER PROVISIONS

### (1) DEFENDANTS' FAILURE OF INVOKING FEDERAL RULES OF CIVIL PROCEDURE RULE 12(b)(1)

For Defendants' false conducts occurred before March 23, 2010, the public disclosure bar is jurisdictional.  For conducts after March 23, 2010, the public disclosure bar is no longer jurisdictional.  To dismiss the FCA complaint under the public disclosure bar for the six grants, Defendants must have invoked Federal Rules of Civil Procedure Rule 12(b)(1), not 12(b)(6).  Defendants' Memorandum of Points and Authorities invokes only FRCP 12(b)(6).

### (2) DEFENDANTS' FAILURE OF INVOKING PRE-PPACA 31 U.S.C. § 3730(e)(4)(A)

After March 23, 2010, the public disclosure bar is no longer jurisdictional. Defendants' Motion to Dismiss invokes only post-Patient Protection and Affordable Care Act (PPACA) 31 U.S.C. § 3730(e)(4)(A). (Defendants' Memorandum of Points and Authorities, page 16 line 21- page 17 line 3.)  The six grants in SAC ¶ 4(1) – 4(6) were awarded before March 23, 2010.  Therefore, Defendants must invoke pre-PPACA 31 U.S.C. § 3730(e)(4)(A).

On March 23, 2010, the President signed into law the Patient Protection and Affordable Care Act (PPACA), Pub.L. 111-148, 124 Stat. 119.  Section 10104(j)(2) of this legislation replaces the prior version of 31 U.S.C. § 3730(e)(4) with new language. (*Graham County Soil and Water Conservation District v. United States ex rel. Wilso*n, 559 U.S. 280 (2010))

Prior to the PPACA on March 23, 2010, the statute stated:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1   unless the action is brought by the Attorney General or the person bringing the

2   action is an original source of the information.

3   (B) For purposes of this paragraph, "original source" means an individual who has

4   direct and independent knowledge of the information on which the allegations are

5   based and has voluntarily provided the information to the Government before filing

6   an action under this section which is based on the information.

7        When faced with a public disclosure challenge, courts have engaged in a

8   multi-step analysis to determine whether the action is barred:

9   (1) whether there has been public disclosure of the allegations or transactions in the

10  relator's complaint; (2) if so, whether the public disclosure occurred in the manner

11  specified in the statute; (3) if so, whether the relator's suit is "based upon" those

12  publicly disclosed allegations or transactions; and (4) if the answers to these

13  questions are in the affirmative, whether the relator falls within the "original

14  source" exception as defined in § 3730(e)(4)(B). (see *Wang v. FMC Corp.*, 975

15  F.2d 1412, 1416 (9th Cir. 1992))

16       Whether a particular disclosure triggers the jurisdictional bar of §

17  3730(e)(4)(A) is a mixed question of law and fact. *See United States ex rel.*

18  *Lindenthal v. Gen. Dynamics Corp.,* 61 F.3d 1402, 1409 n. 9 (9th Cir.1995).  If

19  there has been a public disclosure through one of these sources, it should be

20  determined whether the content of the disclosure consisted of the "allegations or

21  transactions" giving rise to the relators' claim, as opposed to "mere information."

22  *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1473 (9th Cir.1996).  The

23  substance of the disclosure, however, need not contain an explicit "allegation" of

24  fraud, so long as the material elements of the allegedly fraudulent "transaction" are

25  disclosed in the public domain. *See id.* (citing *United States ex rel. Springfield*

26  *Terminal Ry. v. Quinn,* 14 F.3d 645, 654 (D.C.Cir.1994)).  Even assuming that a

27  disclosure qualifies as a "public disclosure" under § 3730(e)(4)(A), in order for the

28  jurisdictional bar to apply, that disclosure must reveal the "allegations or

transactions" underlying Appellants' complaint. *See Hagood,* 81 F.3d at 1473.  In analyzing whether *allegations* of fraud were previously disclosed, it must be determined whether there was a public disclosure of fraud which was "substantially similar to those disclosed in the earlier ... action." *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 162 F.3d 1027, 1033 (9th Cir.1998).  In analyzing whether the *transactions* underlying a relator's complaint were publicly disclosed, however, the courts adopt the analysis first laid out by the District of Columbia Circuit in *United States ex rel. Springfield Terminal Ry. Co. v. Quinn* (D.C.Cir. 1994) 14 F.3d 645, 654-655.  If X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. 14 F.3d at 654.  In so doing, X and Y inevitably stand for but two elements:"a misrepresented state of facts and a true state of facts." *Id.* at 655.

    After March 23, 2010, 31 U.S.C. 3730(e)(4) now states:

(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed:

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

## IV.  DEFENDANTS' DISTORTION AND  MISREPRESENTATION: "PUBLICLY DISCLOSED FACTS AND ALLEGATIONS"

    Defendants' Argument C in their Memorandum of Points and Authorities has the tile: "The Court Should Dismiss the Entire SAC under 31 U.S.C. §

10

3730(e)(4)(A) Because that Complaint Is Based on Publicly Disclosed Facts and Allegations." This is a disingenuous misrepresentation. As explained below, a false claims act complaint based on "publicly disclosed facts" is not necessarily subject to jurisdictional bar. Complaints based on "publicly disclosed allegations or transactions" are subject to jurisdictional bar. For the instant case, there were no "publicly disclosed allegations or transactions" related to the Second Amended Complaint. Defendants attempt to mislead the court that the instant action should be dismissed because the Second Amended Complaint is "based on publicly disclosed facts" in Defendants' Exhibits 1 through 6 in DECLARATION OF JOSHUA M. DEITZ IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT. Defendants' attempt must fail.

Defendants further misrepresent the FCA by stating that "The FCA bars qui tam suits that are based on publicly disclosed facts or allegations. *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 283 (2010); 31 U.S.C. § 3730(e)(4)(A)." Nowhere in *Graham* and 31 U.S.C. § 3730(e)(4)(A) use the term of "publicly disclosed facts or allegations." *Graham* at 283 states: "The Act now contains a provision barring *qui tam* actions based upon the public disclosure of allegations or transactions in certain specified sources. 31 U.S.C. § 3730(e)(4)(A).

If there has been a public disclosure, it should be determined whether the content of the disclosure consisted of the "allegations or transactions" giving rise to the relators' claim, as opposed to "mere information." (*Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1473 (9th Cir.1996); *Wang v. FMC Corp.* (9th Cir. 1992) 975 F.2d 1412, 1418.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1

# V. ARGUMENT

2

## A. The Court Should Not Dismiss the SAC Claims Regarding the NIST Agreements under FRCP 12(b)(6) for Failure to State a Claim.

3

4

In granting Defendants' Motion to Dismiss First Amended Complaint, this

5

Court ruled that "Although the FAC alleges that primary employment is a

6

requirement under the SBIR program, (id. ¶¶ 20-21, 27), it does not allege any

7

such requirement under the TIP program."

8

To amend First Amended Complaint, the following allegations are added to

9

Second Amended Complaint.  As to the TIP proposals,

10

SAC ¶4 (2) and (6) was amended by adding that: "FENG was not eligible to

11

be a principal investigator because she was a full time professor with 100%

12

employment at the University of California, Irvine ("UCI").  The submission of the

13

grant proposal and reports by NEWPORT with FENG as a principal investigator is

14

a false claim, false statement, and/or false certification."

15

SAC ¶4 (6) was amended by adding that: "NEWPORT submitted NIST-

16

1262: Single Company Advanced Technology Program (ATP) Proposal Cover

17

Sheet signed by FENG on February 28, 2003, March 15, 2004, November 15,

18

2004, April 25, 2005, and October 31, 2005.  FENG could not be an authorized

19

company representative of NEWPORT because she was a full time professor at

20

UCI with 100% employment."

21

NEWPORT as a single company applied for the two NIST grants ((2) and

22

(6) of paragraph 4 of SAC).  The principal investigator, FENG, was a 100% full

23

time employee of the University of California, Irvine.  Therefore, NEWPORT's

24

application was false because it was not a single company application.  It must

25

have been a joint application by NEWPORT and the University of California,

26

Irvine. (SAC ¶ 30)

27

ATP Proposal Preparation Kit 2004, Kit 2007, and TIP Proposal Preparation

28

Kit, April 2010, National Institute of Standards and Technology, U.S. Department

12

of Commerce, provide in substance that: A letter of commitment from an authorized senior executive of the company is required to indicate the importance of the project to the company and the company's commitment to supply key resources (e.g., the time of key personnel, cost-sharing, equipment, and facilities). Defendant FENG's commitment as a principal investigator at more than 0% to the two NIST grant projects were false certification because she was employed by the University of California or Columbia University at 100% full time basis. (SAC ¶ 31)

Even if FENG did not contract back to the University of California, Irvine, her participation in the project is an indirect "contract back" to the University of California, Irvine, because she was employed by the University at 100% full time basis.  FENG cannot be an employee of Newport Sensors at more than 0% commitment. (SAC ¶ 35)

Item 17 of the SF-424 (R&R) states that: "By signing this application, I certify (1) to the statements contained in the list of certifications and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties. (U.S. Code, Title 18, Section 1001)" (SAC ¶ 38)

SF-424B, Assurances-Non-Construction Programs, is one of the required assurances. SF 424B provides in paragraph 3 that: "As the duly authorized representative of the applicant, ___I certify___ that the applicant: 3. Will establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of ___personal or organizational conflict of interest, or personal gain.___" (Emphasis added)  For the two NIST grants, defendant FENG represented her as principal investigator of NEWPORT even if she was a

full time employee of the University of California, Irvine, or Columbia University. Therefore, NEWPORT falsely certified in SF-424B.  (SAC ¶ 39, 41)

## B. The Court Should Not Dismiss the Entire SAC under FRCP 9(b)

Under Rule 9(b), "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" (*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-999 (9th Cir. 2010) (quoting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).  However, a plaintiff must nevertheless "provide enough detail 'to give [defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong.'" Id. at 999 (quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001)).

Despite Rule 9(b)'s stringent requirements, "courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284 (3rd Cir. 1992). (citing *Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96, 99 (3rd Cir.1983)).  Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control. *See Shapiro,* 964 F.2d at 285.  This is the situation of the instant case.  Defendants Newport Sensors, Inc. and FENG have defrauded the Government by certifying that FENG is primarily employed by Newport Sensors, Inc. (SAC ¶ 4, 43) and there is no conflict of interest or personal gain. (SAC ¶ 41)  Defendant FENG defrauded UC Irvine by not reporting her Category I and II activities for the grants from DOD, DOT, and DOC NIST, to NEWPORT. (SAC ¶ 51)

In granting Defendants' Motion to Dismiss First Amended Complaint, this Court ruled that: "the relator fails to plead with the requisite level of particularity. First, as to the TIP proposals, the FAC fails to identify (1) why the alleged non-disclosure was false or misleading and (2) what law, rule or regulation was implicated and violated in submitting the alleged claim.  Second, as to all the proposals, the FAC fails to adequately identify 'the who, what, when, where, and how' of the alleged nondisclosure."  To amend First Amended Complaint, the following allegations in SAC ¶¶ 24-41 are added to Second Amended Complaint.

SAC ¶4 (2) and (6) was amended by adding that: "FENG was not eligible to be a principal investigator because she was a full time professor with 100% employment at the University of California, Irvine ("UCI").  The submission of the grant proposal and reports by NEWPORT with FENG as a principal investigator is a false claim, false statement, and/or false certification."

SAC ¶4 (6) was amended by adding that: "NEWPORT submitted NIST-1262: Single Company Advanced Technology Program (ATP) Proposal Cover Sheet signed by FENG on February 28, 2003, March 15, 2004, November 15, 2004, April 25, 2005, and October 31, 2005.  FENG could not be an authorized company representative of NEWPORT because she was a full time professor at UCI with 100% employment."

NEWPORT as a single company applied for the two NIST grants ((2) and (6) of paragraph 4 of SAC).  The principal investigator, FENG, was a 100% full time employee of the University of California, Irvine.  Therefore, NEWPORT's application was false because it was not a single company application.  It must have been a joint application by NEWPORT and the University of California, Irvine. (SAC ¶ 30)

ATP Proposal Preparation Kit 2004, Kit 2007, and TIP Proposal Preparation Kit, April 2010, National Institute of Standards and Technology, U.S. Department of Commerce, provide in substance that: A letter of commitment from an

authorized senior executive of the company is required to indicate the importance of the project to the company and the company's commitment to supply key resources (e.g., the time of key personnel, cost-sharing, equipment, and facilities). Defendant FENG's commitment as a principal investigator at more than 0% to the two NIST grant projects were false certification because she was employed by the University of California or Columbia University at 100% full time basis. (SAC ¶ 31)

Even if FENG did not contract back to the University of California, Irvine, her participation in the project is an indirect "contract back" to the University of California, Irvine, because she was employed by the University at 100% full time basis.  FENG cannot be an employee of Newport Sensors at more than 0% commitment. (SAC ¶ 35)

Item 17 of the SF-424 (R&R) states that: "By signing this application, I certify (1) to the statements contained in the list of certifications and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties. (U.S. Code, Title 18, Section 1001)" (SAC ¶ 38)

SF-424B, Assurances-Non-Construction Programs, is one of the required assurances. SF 424B provides in paragraph 3 that: "As the duly authorized representative of the applicant, ***I certify*** that the applicant: 3. Will establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of ***personal or organizational conflict of interest, or personal gain.***" (Emphasis added)  For the two NIST grants, defendant FENG represented her as principal investigator of NEWPORT even if she was a full time employee of the University of California, Irvine, or Columbia University. Therefore, NEWPORT falsely certified in SF-424B.  (SAC ¶ 39, 41)

As to the court ruling on FAC's failure to adequately identify "the who, what, when, where, and how" for all the proposals, SAC alleges that:

**Award (1) 2009 US Army DOD Grant to Newport Sensors, Inc.**

>Principal Investigator: Maria Q. Feng
>Title: Smart Armor Insert, Crack Detection, Sensor Tape, Sensor Key, Real-Time, In-Situ, Low-Cost, Inspection
>Project Performance Period: 1/19/2009 -10/31/2013
>Total Project: $2,380,712.00
>Agency: US Army, DOD SBIR/STTR
>Contract No. W911QY-09-C-0035.

Since the grant was awarded, the details of the actually submitted false claim and false statement can be inferred from the details of the awarded grant:

Who:      Maria Q. Feng to US Army, DOD SBIR/STTR

What:      Principal Investigator Maria Q. Feng with primary employment with Newport Sensors, Inc. for Proposal requesting $2,380,712.  FENG was not eligible to be a principal investigator because she was a full time professor with 100% employment at the University of California, Irvine ("UCI") or Columbia University.  The submission of the grant proposal and reports by NEWPORT with FENG as a principal investigator is a false claim, false statement, and/or false certification.

When:      Date of Deadline for a grant starting date of 1/19/2009

Where:      7 Murasaki Street, Irvine, California 92617

How:      Submission of proposal electronically or via US mail.

These allegations are "specific enough to give NEWPORT and FENG notice of the particular misconduct which is alleged so that they can defend against the charge and not just deny that they have done anything wrong."

**Award (2) 2009 NIST TIP Grant to Newport Sensors, Inc.**

>Principal Investigator: Maria Q. Feng
>Title: Microwave Thermoelectric Imager For Corrosion Detection and Monitoring In Reinforced Concrete
>Project Performance Period: 2/1/2009 -1/31/2012

Total Project: $2,498,000.00
Agency: National Institute of Standards and Technology (Technology Innovation Program ("TIP") Program Director Felix Wu)

Based upon the award information above, identification of "the who, what, when, where, and how" of the proposal can be made as described for Award (1).

**Award (3) 2007 DOT SBIR Grant to Newport Sensors, Inc.**

Principal Investigator: Maria Q. Feng
Title: Microwave Thermoreflectometry for Corrosion Detection in Concrete
Period: 2007 (Agency Number: 07-FH2)
Total Project: $100,000.00
Agency: Department of Transportation

Based upon the award information above, identification of "the who, what, when, where, and how" of the proposal can be made as described for Award (1).

**Award (4) 2007 SBIR/Phase I DOD Grant to Newport Sensors, Inc.**

Principal Investigator: Maria Q. Feng
Title: Smart Small Arm Protective Inserts
Period: 2007 (Agency Tracking Number A072-157-3059)
Total Project:  $69,996.00
Agency: Department of Defense

Based upon the award information above, identification of "the who, what, when, where, and how" of the proposal can be made as described for Award (1).

**Award (5) 2009 SBIR Phase II DOD Grant to Newport Sensors, Inc.**

Principal Investigator: Maria Q. Feng
Title: Smart Small Arm Protective Inserts
Period: 2009 (Agency Tracking Number A072-157-3059)
Total Project: $361,692.00
Agency: Department of Defense

Based upon the award information above, identification of "the who, what, when, where, and how" of the proposal can be made as described for Award (1).

**Award (6) 2003 NIST ATP Grant to Newport Sensors, Inc.**

Principal Investigator: Maria Q. Feng
Title: Microwave Imaging Technology for Condition Assessment of FRP Composites
Project Performance Period: 10/1/2003-9/30/2006
Total Project: $2,300,126.00

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Agency: National Institute of Standards and Technology (Advanced Technology Program ("ATP"), Program Director Felix Wu)

Based upon the award information above, identification of "the who, what, when, where, and how" of the proposal can be made as described for Award (1).

**C. The Court Should Not Dismiss the SAC under 31 U.S.C. § 3730(e)(4)(A) Because that Complaint Is Not Based on Publicly Disclosed Transactions and Allegations**

**(1) PUBLIC DISCLOSURE TO ALERT THE GOVERNMENT TO READILY IDENTIFY WRONGDOER**

A disclosure is a "public disclosure" if it "alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation." *United States ex rel. Jamison v. McKesson Corp.,* 649 F.3d 322, 329 (5th Cir. 2011)(quoting *In re Natural Gas Royalties,* 562 F.3d1032, 1039 (10th Cir. 2009)).  The disclosures must provide enough specific details to "set the government on the trail of the fraud and ensure that the government will not need to comb through myriad transactions performed by various types of entities in search of potential fraud." *Id.* (quoting *In re Natural Gas Royalties,* 562 F.3d at 1042-43).  Moreover, it must disclose both "the true state of the facts" and that "the defendants represented the facts to be something other than what they were." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,*384 F.3d 168, 174 (5th Cir. 2004) (citing *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,* 276 F.3d 1032, 1048-49 (8th Cir. 2002)).

*United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. University*, 147 F.3d 821 (9th Cir. 1998) states that "where the relator brings new information of fraud to the government, the relator should be rewarded regardless how the relator came into possession of that information.  The reason is that the allegations in the complaint, being previously undisclosed, are valuable to the

government in remedying the fraud that is being committed against it.  On the other hand, where the allegations of the fraud are already in public knowledge, the relator confers no additional benefit upon the government by subsequently repeating the fraud allegations in the complaint.  The relator should be rewarded only if he was an original source of the information."

## (2) RELATOR'S DISCOVERY AND INVESTIGATION

A complete and thorough investigation of a fraud on the Government will likely necessarily involve some review of contracts, documents, or other information in the public domain.  It is the character of the relator's discovery and investigation that controls this inquiry. (*Kennard v. Comstock Resource, Inc.* (10th Cir. 2004) 363 F.3d 1039, 1045.)  *United States ex rel. Springfield Terminal Ry. Co. v. Quinn* (D.D.Cir. 1994) 14 F.3d 645, 657, states that "[the relator] started with innocuous public information [and] completed the equation with information independent of any preexisting public disclosure."

In the instant case, Plaintiff conducted his own investigation and crafted his own claim of the fraud on the Government.  Juan Hong, the president of Relator Juan Hong, A Law Corp., was a professor in the Department of Chemical Engineering of the Henry Samueli School of Engineering at the University of California, Irvine ("UCI").  FENG was a professor of the same school.  He has personal knowledge of the following:  (1) FENG was a full time professor of the Department of Civil and Environmental Engineering of the Henry Samueli School of Engineering at UCI.  (2) The principal place of defendant Newport Sensors, Inc. was the residential house of defendant FENG.  (3) Masanobu Shinozuka was the Chairman of the Department of Civil and Environmental Engineering at UCI during all relevant times of the instant case, from 2003 to 2010.  (4) Masanobu Shinozuka was and is FENG's husband.  (5) Principal investigator of the six

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

awarded grants, FENG, was the same person who Relator identified as full time professor with 100% employment at UCI. (SAC ¶ 8.)

Plaintiff started with innocuous public information, Exhibits 1, 2, 3, and 6 of DECLARATION OF JOSHUA M. DEITZ IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT  and completed the equation with information independent of any preexisting public disclosure.  Exhibits 1, 2, 3, and 6, do not disclose that FENG is a full-time professor at UC Irvine with 100% employment.  Exhibits 4, and 5, do not disclose that FENG is a principal investigator of the six grants from the Government. Exhibit 4, and 5, do not disclose that FENG was the founder of Newport Sensors, Inc.  Plaintiff's claim did not derive from a third party's research and investigation. Plaintiff discovered the alleged fraud and Plaintiff conducted the investigation. The concern discussed in *United State ex rel. Hafter v. Spectrum Emergency Care* (10th Cir. 1999) 190 F.3d 1156, 1162-63, of the necessity to "weed out parasitic plaintiffs who offer only secondhand information, speculation, background information or collateral research" is not implicated in this case.  None of the public documents disclosed the alleged fraud.

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn* (D.D.Cir. 1994) 14 F.3d 645, 654-655, states that "If X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed…… In so doing, we also adopt the District of Columbia Circuit's reasoning that in a fraud case, X and Y inevitably stand for but two elements: "a misrepresented state of facts and a true state of facts."

In the instant case, even if Exhibits 1 through 6 are publicly disclosed, readers or listeners cannot infer the allegation of fraud because there are missing

elements: (i) FENG was a full time professor of the Department of Civil and Environmental Engineering of the Henry Samueli School of Engineering at UCI. (ii) The principal place of defendant Newport Sensors, Inc. was the residential house of defendant FENG.  (iii) Principal investigator of the six awarded grants, FENG, was the same person who Relator identified as full time professor with 100% employment at UCI.

## D. All the Allegations in the Complaint are Relevant.

Federal Rules of Evidence Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

To state a claim under § 3729(a)(1)(A) of the FCA, a relator must allege: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012) (citing *United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008)). "Likewise, to [state a claim] under § 3729(a)(1)(B), the . . . relator must [allege] that defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." Id. at 1048.  "[I]n general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Bourseau*, 531 F.3d at 1171 (internal quotation marks omitted) (second alteration in original) (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)).

## 1. Allegations Regarding Dr. Feng's Relationship with UC Irvine Are Not Irrelevant and Prejudicial

Allegations regarding FENG's relationship with UC Irvine are relevant to FENG's false statement that FENG's primary employment is with Defendant

Newport Sensors, Inc., and FENG's false certification that there is no conflict of interest regarding her dual employment by UC Irvine and Newport Sensors, Inc. (SAC ¶ 41, 43.)

The allegations are material to the decision-making process of the funding agencies because they would not have granted the proposals had they known or FENG's responsibility as full time professor with 100% employment at UC Irvine. (SAC ¶ 33.)

The allegations are relevant to prove that FENG made false claim and false statement with knowledge that the claim and the statements were false or fraudulent. If FENG knew that her role as principal investigator of NEWPORT for the six government grant projects is legitimate, FENG would not have concealed her outside activities in violation of APM-025 of the University of California. (SAC ¶ 51.) FENG's husband and Department Chair, Masanobu Shinozuka, acquiesced FENG's concealment of her outside activities as Principal Investigator of NEWPORT (SAC ¶ 54.) His acquiescence is a conflict of interest because he cannot financially benefit from the acquiescence of FENG's concealment. (SAC ¶ 55.) Masanobu Shinozuka's acquiescence of FENG's violations of the UC Irvine rules caused to be presented false or fraudulent claims for payment and/or false statements material to false or fraudulent claims. (SAC ¶ 56.)

## 2. Allegations Regarding Masanobu Shinozuka and Hong Feng Are Not Irrelevant and Prejudicial

Defendants Newport Sensors, Inc. and Maria Q. Feng obtained the six research grants with false certification that FENG's primary employment is with Defendant Newport Sensors, Inc., and there is no personal or professional conflict of interest, or ***personal gain.*** (SAC ¶¶ 41, 52) Defendants furthered this scheme to defraud the government by concealing from UC Irvine FENG's relationship to Defendant Newport Sensors, Inc. Defendants also furthered this scheme by operating Defendant Newport Sensors, Inc. as a family business.

23

To prove "knowledge" element of § 3729(a)(1)(A) and (B) for false certification of no personal or professional conflict of interest, or ***personal gain,*** involvement in Newport Sensors, Inc. operation of Masanobu Shinozuka as FENG's husband, and Hong Feng as FENG's sister, is relevant.

SAC ¶ 9 alleges that "Defendant NEWPORT is a privately held, for-profit California Corporation, with its principal place of business located at 7 Murasaki Street, Irvine, California 92617, during all relevant times of the instant case.  The principal place was the residential house of Defendant FENG.  Part owners of Defendant NEWPORT are Defendant FENG and The Kenneth Feng Shinozuka 2012 Irrevocable Trust.  For a 2014 SBIR contract (Contract W911QX-14-C-0047, A141-017-0477; Program Manager: Chian-Fong Yen) from Department of Defense to Newport Sensors, Inc., Hong Feng is listed as a principal investigator and CEO of Newport Sensors, Inc.  On information and belief, Hong Feng is a sister of Defendant FENG."

SAC ¶ 55 alleges that "Masanobu Shinozuka was the Chairman of the Department of Civil and Environmental Engineering at UCI during all relevant times when the FENG was a full-time tenured professor in the Department of Civil and Environmental Engineering at UCI from 2003 to 2010.  Masanobu Shinozuka was and is FENG's husband.  The principal place of NEWPORT was the residential house of Defendant FENG and Masanobu Shinozuka.  Masanobu Shinozuka must have known FENG's activities for the six grant projects of NEWPORT.  His acquiescence is a conflict of interest because, in California, married couples have legal access to 50 percent of their spouse's income.  Masanobu Shinozuka cannot financially benefit from the acquiescence of FENG's concealment.

SAC ¶ 56 alleges that "Masanobu Shinozuka must have subjected FENG to discipline, corrective action, or administrative remedies, pursuant to APM 025-26(b): "Situations where faculty will be considered out of compliance include, but

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

are not limited to, failure to obtain prior written approval to engage in Category I activities, to obtain prior written approval for involving a student in outside professional activity (see APM - 025-8-d), to comply with time limits for Categories I and II activities, and/or to accurately disclose and describe the nature and scope of Categories I and II outside professional activities.  Failure to comply with this policy may subject a faculty member to discipline, corrective action, or administrative remedies pursuant to APM - 016, University Policy on Faculty Conduct and the Administration of Discipline, and APM - 150, Non-Senate Academic Appointees/Corrective Action and Dismissal."  However, Masanobu Shinozuka's acquiescence of FENG's APM-025 violations caused to be presented false or fraudulent claims for payment and/or false statements material to false or fraudulent claims.

## VI. CONCLUSION

 For the foregoing reasons, Defendants' Motion to Dismiss and Motion to Strike Second Amended Complaint must be denied.

DATED: April 29, 2016 LAW OFFICE OF JUAN HONG

BY:/s/ Juan Hong
JUAN HONG, ATTORNEY for Plaintiffs